883 F.2d 74
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William Joseph HALL, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 88-2148.
 United States Court of Appeals, Sixth Circuit.
 Aug. 21, 1989.
 
 Before MERRITT and DAVID A. NELSON, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 In 1972 plaintiff William Joseph Hall was convicted of making false statements to the United States. In 1987 he moved to have his conviction vacated under 28 U.S.C. Sec. 2255. He contended, among other things, that he had been denied counsel of his choice at the 1972 trial and that the attorney who represented him had a conflict of interest. The motion was referred to a magistrate, Virginia M. Morgan, who recommended that it be denied. The district court adopted the recommendation.
 
 
 2
 On appeal Mr. Hall renews the arguments he made in the district court and also claims that Magistrate Morgan ought to have recused herself because of a tangential involvement she had with the case when she was an Assistant United States Attorney. We do not believe that recusal was required, and we are not persuaded that the Sec. 2255 motion was wrongly decided. The order denying the motion will be affirmed.
 
 
 3
 * * *
 
 
 4
 * * *
 
 
 5
 In August of 1972 Mr. Hall and two other men, Thomas Kubeck, and Dennis Lukasik, were indicted for illegal acts allegedly committed with a view to obtaining subsidized real estate loans through the United States Department of Housing and Urban Development. Messrs. Hall and Kubeck were charged with violating 18 U.S.C. Sec. 1001 by making false statements to the government in connection with the financing of a house located on Albany Street in Ferndale, Michigan. Mr. Lukasik was charged with related crimes.
 
 
 6
 Mr. Hall retained an attorney named Joseph Louisell to represent him. He also arranged for Mr. Louisell's partner, Phillip Gillis, to represent Mr. Kubeck. Mr. Lukasik was represented by Attorney Neil Fink. Mr. Louisell died a month before trial, and Mr. Gillis then assumed Mr. Hall's representation.
 
 
 7
 Two days before trial, Attorney Gillis met with Mr. Hall for the first time. At a hearing conducted on the eve of trial, the lawyer said that he was prepared to represent Mr. Hall. He then presented arguments in support of alternative motions to dismiss all charges against Mr. Hall and Mr. Kubeck and to sever count one, under which his clients were charged, from counts two and three, which named Mr. Lukasik. The motions were denied.
 
 
 8
 When told that the trial would commence the following day, Mr. Gillis responded, "I'll be ready." Mr. Hall then requested permission to address the court, and the following colloquy ensued:
 
 
 9
 "DEFENDANT HALL: * * *
 
 
 10
 The question I have is this, your Honor, and I don't know what to do, and I think I should ask you.
 
 
 11
 Mr. Gillis is, of course, willing to represent me. I got Mr. Louisell because I thought that I needed Mr. Louisell. I paid my money to get Mr. Louisell. And I'm not dissatisfied with Mr. Gillis, you understand, but I, I think I'm--
 
 
 12
 THE COURT: Well, I hope not, because chances are Mr. Louisell would have sent him over here to try it, anyway.
 
 
 13
 DEFENDANT HALL: The thing is, sir, I selected my attorney and I paid my money, and I don't have an attorney now and I'm not quite sure who I want my attorney to be. I'm very nervous and very upset, and I don't know what I should say or what I should do, and I obviously need an attorney, and I need some more time to know for sure.
 
 
 14
 THE COURT: But you say you're not satisfied--you're not dissatisfied with Mr. Gillis?
 
 
 15
 DEFENDANT HALL: Quite frankly, sir, I am not dissatisfied with a Public Defender, but I will not be satisfied with a Public Defender, either, sir.
 
 
 16
 THE COURT: No. I say that you've indicated that you're not dissatisfied with Mr. Gillis?
 
 
 17
 DEFENDANT HALL: I think I'm not, sir, that's right.
 
 
 18
 THE COURT: Well, do you feel that he hasn't had enough time to prepare your defense?
 
 
 19
 DEFENDANT HALL: That's exactly what I think, sir.
 
 
 20
 THE COURT: Even though he has indicated he is ready?
 
 
 21
 MR. GILLIS: May I ask this, your Honor? May I ask for a five-minute recess?
 
 
 22
 THE COURT: Well, I think not. I think this man is an interested party here and he has got a lot at stake. I think he has a right to address the Court, in the light of the fact that Mr. Louisell passed away last month. What he is indicating, as I understand him, is that he made up his mind and he retained Louisell, and often laymen don't understand that when they retain one lawyer they really retain a firm, and he may not know that Mr. Louisell would send you over here, anyway.
 
 
 23
 DEFENDANT HALL: Mr. Louisell, sir, told me that he would personally represent me, and that was the agreement that was made.
 
 
 24
 THE COURT: Well, what do you wish, Mr. Hall?
 
 
 25
 DEFENDANT HALL: I wish some time to decide who I want my attorney to be, sir.
 
 
 26
 THE COURT: Well, I'm going to adjourn this matter until 9:00 a.m. tomorrow morning. I suggest you discuss this with Mr. Gillis.
 
 
 27
 DEFENDANT HALL: Yes, sir.
 
 
 28
 THE COURT: And if you are of the same mind, you can advise the Court in the morning.
 
 
 29
 DEFENDANT HALL: Thank you, sir."
 
 
 30
 The trial commenced the next morning, and the transcript contains no indication that Mr. Hall told the court that he wanted more time or that he wanted someone other than Mr. Gillis to represent him.
 
 
 31
 The prosecution presented evidence designed to show that Mr. Hall was a landlord who "sold" his rental houses to straw purchasers who could qualify for low interest mortgages from HUD. After these mortgages had been obtained, the government contended, Mr. Hall had the straw purchasers deed the houses back to him so he would get the benefit of the favorable financing terms. The government attempted to prove that Lukasik supplied the straw purchasers and that Kubeck acted as the broker on the Albany Street property.
 
 
 32
 Attorney Gillis put no witnesses on the stand, but tried to persuade the jury that the government had failed to prove the elements of the crime beyond a reasonable doubt. That effort proved unsuccessful; all three defendants were found guilty.
 
 
 33
 Mr. Hall, who had been released on bond, failed to appear for his sentencing. He remained a fugitive until 1980, when he was apprehended and sentenced. In 1981 Mr. Hall took advantage of a temporary furlough to decamp again. He was returned to prison in 1986, and he commenced the present proceeding while incarcerated.
 
 
 34
 * * *
 
 
 35
 * * *
 
 
 36
 In support of his claim that he was denied the counsel of his choice, Mr. Hall argues that the trial court ought to have granted him a last-minute continuance, sua sponte, so he could obtain other counsel. This contention has no merit whatever. On the day before the trial started Mr. Hall expressly denied being dissatisfied with Mr. Gillis. He was invited to bring the matter to the court's attention the following morning if he decided he wanted to retain other counsel, but he chose not to avail himself of this invitation. At no time thereafter did he tell the court that he was dissatisfied with Mr. Gillis or that he wished to have a different attorney.
 
 
 37
 Mr. Hall now contends that Attorney Gillis had a conflict of interest because of the dual representation. The law is clear, however, that the trial court had no duty to raise a question as to Mr. Gillis's representation of both Hall and Kubeck.
 
 
 38
 "[N]othing in [the Supreme Court's] precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case.... Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist.... Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry."
 
 
 39
 Cuyler v. Sullivan, 446 U.S. 335, 346-47 (1980) (footnotes omitted). Mr. Hall not having raised the question of a conflict at or before the time of trial, he may not do so now.
 
 
 40
 Mr. Hall claims next that he was denied effective assistance of counsel. He asserts that he was in fact the victim of a fraud perpetrated on him by Kubeck and Lukasik; that the signatures of himself and his wife on the deed transferring the Albany Street property were forgeries; and that Lukasik and Kubeck deeded the property back to him only after they had obtained the mortgage proceeds for their own use and benefit. Mr. Hall claims that he sought to introduce evidence to this effect but was rebuffed by Mr. Gillis because it would undermine Kubeck's defense.
 
 
 41
 Magistrate Morgan found "that Hall's version of the events is not credible, and it is more likely than not that [it was] fabricated after the actual trial and conviction." This finding is buttressed by the fact that it was Mr. Hall who paid for Kubeck's representation. An alleged confession of Kubeck and Lukasik did not surface until 1987, 15 years after trial, and the confession was in the handwriting of a certain Kathleen Manning. Ms. Manning, it appears, had accompanied Mr. Hall during his years as a fugitive. Attorney Gillis testified that he had not seen the confession prior to 1987; that Hall had not informed him of the alleged scheme by Kubeck and Lukasik; and that the attorney was not aware of any conflict of interest before or during the trial.
 
 
 42
 The magistrate found a number of discrepancies and inconsistencies in the testimony of Hall's witness. Our review of the record does not suggest that the magistrate's credibility finding was clearly erroneous. See Fed.R.Civ.P. 52(a). Mr. Hall failed to show by a preponderance of the evidence that his interests at trial were at variance with those of Mr. Kubeck--and the burden of proof lay with Mr. Hall. United States v. Bondurant, 689 F.2d 1246, 1251 (5th Cir.1982)
 
 
 43
 Mr. Hall's final claim is that we must vacate the order of the district court because of Magistrate Morgan's involvement in the proceedings against Hall at a time when he was a fugitive and she was an Assistant United States Attorney. The record reveals that in February of 1980 Ms. Morgan prepared a status report on Hall's case for use by Judge Charles Joiner in managing his "no progress" docket. In addition, a government memorandum dated May 13, 1980, indicated that the FBI would "remain in contact with AUSA Virginia Morgan as to the prospective status of the case."
 
 
 44
 At the time the district court considered the magistrate's report and recommendation, the court was aware of Ms. Morgan's involvement with the case as an Assistant United States Attorney. The court concluded that this involvement had not gone beyond routine administrative duties. Ms. Morgan had simply acted as a liaison officer, keeping the court apprised of Mr. Hall's status as a fugitive. There is no reason to suppose that she had any knowledge of the underlying facts of the case.
 
 
 45
 We think the level of Ms. Morgan's involvement in the criminal case as an Assistant U.S. Attorney more than seven years before this civil proceeding reached her as a magistrate was not such that it would be at all likely to have influenced her handling of the evidentiary hearing and the compilation of her report. The district court did not err in adopting Magistrate Morgan's report and recommendation.
 
 
 46
 The order of the district court is AFFIRMED.